IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLARA ANN REYNOLDS,

    Plaintiff,

v.                                                                                   No. 17-cv-0615 SMV

NANCY A. BERRYHILL,
Acting Commissioner of Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 23] ("Motion"), filed on December 1, 2017. The Commissioner responded on January 19, 2018. [Doc. 26]. Plaintiff replied on February 16, 2018. [Doc. 27]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 24]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of Drs. Koewler, Chiang, and Robinowitz. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on April 16, 2013. *See* Tr. 391. She alleged a disability-onset date of August 1, 2008. Tr. 306. Her claim was denied by an ALJ, remanded by this Court, and denied a second time by an ALJ. *See* Tr. 306–22. ALJ Ann Farris held the second administrative hearing by

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

video conference on January 25, 2017, from Albuquerque, New Mexico. Tr. 306–22, 329–59. Plaintiff appeared with her attorney from Farmington, New Mexico. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE") Beth Drury. *Id.*

The ALJ issued her unfavorable decision on March 8, 2017. Tr. 322. Initially, she found that Plaintiff met the insured status requirements through September 30, 2012. Tr. 308. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There, she found that Plaintiff suffered from the following severe impairments: osteoarthritis in the knees, a mood disorder, Post Traumatic Stress Disorder ("PTSD"), borderline personality disorder, learning disorder, polysubstance abuse, and obesity. *Id.* However, the ALJ specifically found that Plaintiff had no medically determinable mental impairment prior to her date last insured. Tr. 309. She further found that Plaintiff's hypertension and gastroesophageal reflux disease were not severe and that her bilateral hand pain was not a medically determinable impairment. *Id.*

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 309–11. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 312–20. The ALJ found that:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except that she cannot kneel, crouch, or crawl. She is limited to simple, routine tasks with reasoning level 1, should have no interaction with the general public[] and only occasional, superficial interaction with co-workers.

Tr. 312.

At step four the ALJ found that Plaintiff had no past relevant work. Tr. 320. The ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 320–21. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction within 60 days. Therefore, pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision is the final decision of the Commissioner. Plaintiff appealed directly to this Court on June 6, 2017. [Doc. 1].

## Analysis

The ALJ failed to apply the correct legal standards in evaluating the opinions of Dr. Koewler, Dr. Chiang, and Dr. Robinowitz. The ALJ failed to include the doctors' assessed limitations in the RFC and she also failed to explain the omissions. Accordingly, remand is warranted to revisit their opinions. Plaintiff's request for an immediate award of benefits will be denied because further fact-finding is needed. The Court declines to pass on Plaintiff's other alleged errors at this time.

### The ALJ erred in rejecting portions of the source opinions and failing to explain the rejections.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is

5

charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

<u>Dr. Koewler</u>

John Koewler, Ph.D., performed a consultative evaluation of Plaintiff's mental status on June 19, 2013. Tr. 256–58. He diagnosed bipolar disorder, not otherwise specified ("NOS"); PTSD; insomnia; learning disorder, NOS; polysubstance dependence in reported full remission; and borderline personality disorder. Tr. 258. He found that Plaintiff's "long history of substance abuse . . . has certainly exacerbated her problems." *Id.* However, "[e]ven if she maintains sobriety, she will still have severe psychiatric problems." *Id.* As to her resultant functional limitations, he found:

> Her ability to understand and remember detailed or complex instructions is markedly limited. Her ability to understand and remember very short simple instructions is moderately limited. Her ability to carry out instructions is markedly limited. Her

6

> ability to attend and concentrate is moderately limited. Her ability to work without supervision is markedly limited. Interaction with the public, coworkers, and supervisors is markedly limited. Her ability to adapt to changes in the work place is at least moderately limited. Her awareness of normal hazards and appropriate reaction could be mildly limited. Use of public of transportation could be moderately limited.

*Id.*

The ALJ accorded "partial weight" to Dr. Koewler's opinion. Tr. 318. She explained that:

> [W]hile . . . the medical evidence of record support[ed] limitations in understanding, remembering, or applying information, and interacting with others, they d[id] not rise to the marked level. For the most part, Dr. Koewler's opinions [we]re of one level of severity greater than what the medical evidence of record support[ed]. Furthermore, Dr. Koewler [wa]s an examining source and not a treating source.

*Id.*

Plaintiff argues that Dr. Koewler's assessed limitations in Plaintiff's ability to **(1) interact with supervisors, (2) carry out instructions, and (3) work without supervision** are not reflected in the ALJ's RFC assessment. *See* [Doc. 23] at 9. Plaintiff argues that the ALJ's evaluation of Dr. Koewler's opinion fails to explain why she omitted the limitations. *Id.* Even assuming that the marked limitations should be "one level" less, which would make them moderate limitations, Plaintiff argues that the ALJ still failed to include them in the RFC. *Id.*

Defendant argues that the ALJ's evaluation of Dr. Koewler's opinion was permissible. [Doc. 26] at 12. In addition to the ALJ's explicit evaluation of Dr. Koewler's opinion, Defendant points out that the ALJ had thoroughly discussed the longitudinal medical evidence of Plaintiff's mental impairments and found that Plaintiff had generally normal findings on mental

7

status examination, and showed improvement in her symptoms with psychotropic medications *Id.* at 12–13 (citing Tr. 316). Defendant's argument fails to address the error Plaintiff alleges.

Plaintiff's position is that Dr. Koewler's assessed limitations—even if reduced by "one level of severity" from marked to moderate—are not accounted for in the RFC assessment. Defendant does not argue otherwise. Plaintiff further argues that the ALJ failed to explain why she rejected these limitations. The Court agrees with Plaintiff. Neither the ALJ's explicit findings on Dr. Koewler's opinion nor the general findings cited by Defendant explain why the ALJ rejected Dr. Koewler's assessed limitations in Plaintiff's ability to (1) interact with supervisors, (2) carry out instructions, and (3) work without supervision. Considering that the limitations are not obviously contradicted by the record and are also not accounted for in the RFC, it was reversible error for the ALJ to fail to explain why the limitations were not incorporated into the RFC assessment.

### Dr. Chiang and Dr. Robinowitz

The non-examining doctors, Elizabeth Chiang, M.D., and Ralph Robinowitz, Ph.D., assessed Plaintiff's functional limitations on July 5, 2013, and August 5, 2013, respectively. Tr. 49–51, 97–99. They both agreed that Plaintiff had a marked limitation in in her ability to carry out detailed instructions and moderate limitations in the following abilities:

- carry out very short and simple instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule, to maintain regular attendance and to punctual;
- work in coordination with or in proximity to others without being distracted by them;
- compete a workday or workweek without interruptions from psychologically based symptoms;
- perform at a consistent pace without an unreasonable number and length of rest periods;

8

> • interact appropriately with the general public;
>
> • accept instructions from and respond appropriately to criticism from supervisors;
>
> • get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
>
> • maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
>
> • respond appropriately to changes in the work setting; and
>
> • set realistic goals and to make plans independently of others.

*Id.*

The ALJ accorded "partial weight" to the non-examining opinions. Tr. 319. She gave two reasons. First, she explained that the opinions were "generally consistent with the overall record[,] but they do not explain why [Plaintiff]'s ability to carry out simple and detailed instructions is more limited than her ability to understand and remember those instructions." *Id.* Second, the ALJ noted that the doctors were "only reviewing sources." *Id.*

Plaintiff argues that the ALJ's stated assessment of the non-examining opinions fails to explain why she omitted (from the RFC) limitations in the ability to **(1) perform at a consistent pace without an unreasonable number and length of rest periods, and (2) accept instructions from and respond appropriately to criticism from supervisors**. [Doc. 23] at 12. Defendant disagrees. [Doc. 26] at 13–14. Defendant argues that these limitations were, in fact, accounted for in the RFC assessment. *Id.* at 14. Defendant cites no authority for her position.

"There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015); *see also Chapo*, 682 F.3d at 1290 n.3 (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills

but, rather, general prerequisites for most work at any skill level"). This appears to such a case; the RFC assessment does not adequately address the mental limitations at issue.

Limiting Plaintiff to unskilled (or simple) work,[3] as the ALJ did here, does not account for moderate limitations in her ability to (1) perform at a consistent pace without an unreasonable number and length of rest periods, and (2) accept instructions from and respond appropriately to criticism from supervisors. This discrepancy is evident by the fact that these mental abilities are considered "critical" for unskilled work. Program Operations Manual System ("POMS") § DI 25020.010(B)(3)(i) and (k).

Nor do the other limitations in the RFC assessment capture these limitations. *See* Tr. 312 (reasoning level 1, no interaction with the general public, and only occasional, superficial interaction with co-workers).

Moreover, SSR 96-9p indicates that a limitation in the ability to respond appropriately to supervision is not accounted for in a limitation to unskilled work. Where an individual such as Plaintiff is limited to sedentary, unskilled work, an additional "substantial loss" in the ability to respond appropriately to supervision "would justify a finding of disability." SSR 96-9p, 1996 SSR LEXIS 6, at *26, 1996 WL 374185, at *9 (1996).

> A less than substantial loss of ability to [respond appropriately to supervision] may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities *must be assessed and a judgment made* as to [its] effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more

---

[3] The Court finds no material difference in the RFC's limitation to "simple, routine tasks" and "unskilled" work. *See* SSR 96-9p, 1996 SSR LEXIS 6, at *9, 1996 WL 374185, at *9 (defining mental requirements of unskilled work to include "[u]nderstanding, remembering, and carrying out simple instructions"); *Vigil*, 805 F.3d at 1204 (equating simple work with unskilled work).

10

of these basic work activities, it may be useful to consult a vocational resource.

*Id.* (emphasis added). If unskilled work encompassed a moderate limitation in the ability to respond appropriately to supervision, this portion of the SSR would not be necessary. Based on the POMS' description of mental abilities "critical" for unskilled work, as well as SSR 96-9p's explanation of the effect of certain mental abilities on the sedentary, unskilled occupational base, the Court finds that the limitations at issue here—to (1) perform at a consistent pace without an unreasonable number and length of rest periods, and (2) accept instructions from and respond appropriately to criticism from supervisors—are not adequately accounted for in the RFC assessment in this case. Without an explanation for why the limitations were omitted, remand is warranted.

<u>Remand for further findings is required.</u>
<u>An immediate award of benefits is not appropriate.</u>

Plaintiff's request for remand for an immediate award of benefits should be denied because further fact-finding is required. Proper evaluation of the source opinions on Plaintiff's mental functioning is needed. Additionally, testimony from a VE may also be needed. (It is not clear that Plaintiff would necessarily be disabled if all of the limitations assessed by Drs. Koewler, Chiang, and Robinowitz were accurately reflected in the RFC assessment.) *See Salazar v. Barnhart*, 486 F.3d 615, 626 (10th Cir. 2006) (explaining that one factor to consider in determining whether to remand for an immediate award of benefits is "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits.") (brackets and internal quotation marks omitted). Therefore, remand for an immediate award of benefits is not warranted.

11

**Conclusion**

The ALJ failed include in the RFC assessment all of the limitations found by Dr. Koewler, Dr. Chiang, and Dr. Robinowitz. Without an explanation for these omissions, remand is required. Plaintiff's request for an immediate award of benefits will be denied because further fact-finding is necessary. The Court declines to pass on Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing [Doc. 23] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**